# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ellen Quinn,

                 Plaintiff,                  **MEMORANDUM OPINION AND ORDER**

v.                                                  Civil No. 09-1372 ADM/LIB

St. Louis County, a municipal
Corporation,

                 Defendant.

_____

Joni M. Thome, Esq., and Frances E. Baillon, Esq., Halunen & Associates, Minneapolis, MN, on behalf of Plaintiff.

Thomas E. Marshall, Esq., and V. John Ella, Esq., Jackson Lewis LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On August 26, 2010, the undersigned United States District Judge heard oral argument on Defendant St. Louis County, a municipal Corporation's (the "County") Motion for Summary Judgment [Docket No. 44]. Plaintiff Ellen Quinn ("Quinn") asserts claims against the County for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-.41. For the reasons stated below, the County's Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

Quinn began working for the County in 1994 as a public information officer. Notice of Removal [Docket No. 1], Ex. A (Compl.) ¶¶ 1, 3. In 2007, Quinn and another female employee

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

reported that they had been sexually harassed by employees of the County and an investigation ensued. Id. ¶ 12. During the investigation, County Commissioner Steve Raukar, one of the accused perpetrators of the sexual harassment, retained former county attorney Alan Mitchell ("Mitchell") as his personal attorney. Id. ¶ 16. In August 2007, the harassment dispute was resolved by a settlement agreement with the County. Id. ¶ 25. The settlement agreement included a provision protecting Quinn's employment with the County, allowing only for "just cause" termination. Thome Aff. [Docket No. 51], Ex. A at 1. Due to mental health problems, stemming in part from stress related to the harassment dispute, Quinn took FMLA leave from May 14, 2007 to August 10, 2007. Ella Decl. [Docket No. 48], Ex. 4 at 3.

In the fall of 2007, Quinn claims that several employees of the County made disparaging remarks regarding the truth of her sexual harassment allegations. Compl. ¶¶ 26-27, 31. Quinn also claims that her office was moved and her personalized office paint color was changed without her consent contrary to workplace custom. Thome Aff., Quinn Dep. 99-101. Quinn further claims that she was excluded from upgrading the County's video system, a project with which she had previously been involved. Id. at 138-39.

Sometime in early 2008, Quinn learned that Mitchell would be her new supervisor. See Compl. ¶¶ 32-33. During a meeting on February 13, 2008, Quinn alleges that Mitchell called her a "problem employee," stated that the two did not "need to go out for dinner or for drinks or on a date to get along," and told her to "work hard." Id. ¶¶ 33, 34, 36.

Two days later, Quinn met with the human resources director and asked that she be assigned to a different supervisor. Id. ¶ 38. She told the human resources director that "she was depressed and suicidal, and [she] then cried hysterically." Id. Mitchell refused to allow Quinn

to be reassigned to a new supervisor. Id. ¶ 41.

Quinn alleges that during the few months that she worked under Mitchell's supervision, Mitchell (1) wrongfully accused her of "being delinquent on a project"; (2) "yelled at [her] in front of her co-workers"; (3) "question[ed] her use of leave"; and (4) warned her in a written letter "to be at work at the exact same time each day and to have any absence approved in advance, no matter how brief." Id. ¶¶ 40-45.

In March 2008, Quinn's doctor recommended she take a full-time leave from work due to depression and anxiety. Thome Aff., Quinn Dep. 214-17. Wishing to avoid full-time leave, Quinn requested a reduced work week of three days. Id. She claims that Mitchell would agree to the reduced schedule only if she missed Tuesdays, the day of the weekly county board meeting. Id. at 217-18. Given the added stress of negotiating the reduced work week, Quinn's doctor again encouraged her to take full-time leave from work. Id. at 219.

On April 3, 2008, Quinn followed her doctor's recommendation and took a full-time leave from work. Compl. ¶ 46. The following day, Mitchell called Quinn's doctor to verify the authenticity of her doctor's notes. Id. ¶ 57. On April 7, 2008, Employee Relations Director Martha Watson ("Watson") wrote to Quinn to inform her that she was not eligible for FMLA leave until May 14, 2008. Thome Aff., Ex. M. On April 8, 2008, Quinn went to the office to clean her desk. Compl. ¶ 53. She was given a letter written by Mitchell informing her that she was considered absent without leave and would not be on leave until he approved it. Id. ¶ 55. Afterwards, on the same day, Watson wrote Quinn to tell her that while Mitchell was considering her request for sick leave, she could still take vacation time. Thome Aff., Ex. O. The next day, Quinn received a letter of notification that Mitchell had approved her use of sick

3

leave, but only until May 5, 2008.  Compl. ¶ 28.

On May 20, 2008, the County provisionally approved Quinn for FMLA leave, retroactively designating her leave date as May 14, 2008. Thome Aff., Ex. T.  The County asked Quinn to provide medical certification, and the parties exchanged correspondence discussing the deficiencies in the certification previously provided.  Thome Aff., Exs. V, W, X, Y, Z.  Quinn's inability to cure those deficiencies caused the County to deny her FMLA leave by letter dated July 10, 2008.  Thome Aff., Ex. BB.  Quinn then provided additional medical information and was approved on July 18, 2008 for FMLA leave retroactive to May 14, 2008.  Thome Aff., Ex. EE.

On August 8, 2008, Mitchell told Quinn by letter that her FMLA leave had expired and that her request for sick leave was denied.  Thome Aff., Ex. II.  Several days later, Mitchell asked for an independent medical examination to corroborate her need for sick leave.  Thome Aff., Ex. KK.  On September 18, 2008, Quinn saw an independent medical examiner, Dr. Kral. Compl. ¶ 64.  Dr. Kral corroborated Quinn's previous diagnosis, and opined that Quinn would be unable to ever return to work for the County.  Id.  The County then authorized Quinn's use of her remaining sick leave.  Thome Aff., Ex. TT.

On October 15, 2008, Quinn exhausted her paid sick leave and was placed on unpaid sick leave. Thome Aff., Ex. WW.  The County requested on October 22, 2008, that she clear her office so it could be used for a new employee, and Quinn complied on October 27, 2008. Compl. ¶¶ 67, 69.  When Quinn received her October 31, 2008 paycheck, it reflected that she was no longer being paid or accruing sick leave or vacation time, and she learned on November 4, 2008, that she no longer had health insurance.  Id. ¶¶ 70-71.

Quinn originally filed her Complaint in state court in May 2009. The case was removed to this Court on June 10, 2009. The County's Motion to Dismiss Counts II, IV, V, VI, and VII was granted by Order dated November 9, 2009 [Docket No. 16]. The County has now moved for summary judgment on Quinn's remaining claims–reprisal under the MHRA (Count I) and violation of the FMLA (Count III).

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Reprisal under the MHRA

The MHRA makes it unlawful for an employer accused of sexual harassment to "intentionally engage in any reprisal" against persons involved in the harassment investigation. See Minn. Stat. § 363A.15 (making reprisal against individuals reporting discrimination under MHRA unlawful); id. § 363A.03 (defining sexual harassment as discrimination for MHRA

purposes). Reprisal includes "any form of intimidation, retaliation, or harassment," as well as "depart[ing] from any customary employment practice; transfer[ing] or assign[ing] the individual to a lesser position . . . ." Id. § 363A.15.

Claims of reprisal under the MHRA must be brought within one year of the occurrence of the reprisal. Id. § 363A.28, subd. 3. However, under the continuing violation doctrine, courts may toll the statute of limitations period where an employer's actions "indicate a systematic repetition of the same policy and constitute a sufficiently integrated pattern to form, in effect, a single discriminatory act." Hubbard v. United Press Int'l., Inc., 330 N.W.2d 428, 440-41 n.11 (Minn. 1983). "To establish a continuing violation, a plaintiff must show that at least one incident . . . occurred within the limitations period." Giuliani v. Stuart Corp., 512 N.W.2d 589, 595 (Minn. Ct. App. 1994).

Quinn's claim under the MHRA is time-barred because she has not adduced evidence of a single incident of reprisal in the relevant time frame. Quinn may invoke the continuing violation doctrine only if she can show an act by the County after May 11, 2008 that forms part of an integrated pattern of retaliation. Other than Quinn's subjective feeling of being harassed, she has not identified a thread which binds her lengthy recitation of work-related slights to form a pattern. Therefore, determining whether any of the correspondence between Quinn and the County after May 11, 2008 fits into that pattern is an unavailing task. At oral argument, Quinn's counsel was unable to cite a specific act of reprisal within the limitations period. Quinn cannot avoid summary judgment by making only vague and conclusory statements that the continuing violation doctrine applies without reference to a specific act of reprisal after May 11, 2008. This she has not done. Therefore, the continuing violation doctrine does not apply and her claim is

untimely.

## C. FMLA

In addition to her claim under the MHRA, Quinn has asserted claims under the FMLA. Quinn claims that the County interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1) and retaliated against her for exercising her rights in violation of 29 U.S.C. § 2615(a)(2). Quinn's FMLA claims fail as a matter of law because she has not produced evidence establishing a prima facie violation of the FMLA under either an interference or retaliation theory. Furthermore, even if Quinn could establish a prima facie violation of the FMLA for interference or retaliation or both, she has not suffered any legally cognizable damages.

### 1. Interference under the FMLA

To establish a prima facie interference claim under the FMLA, a plaintiff must show that she was entitled to a benefit denied. Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006). Quinn has failed to establish a prima facie case because she has shown neither that (1) she was entitled to any benefit of the FMLA nor (2) assuming she was entitled to FMLA benefits, she was denied any such benefits.

#### a. Quinn was not entitled to the benefits of the FMLA

The FMLA entitles "eligible employees" to twelve weeks of medical leave each year and to be returned to the same or similar position upon returning from leave. 29 U.S.C. §§ 2612, 2614. An "eligible employee" is one that has worked for her employer for at least twelve months and for at least 1,250 hours in the preceding twelve month period. 29 U.S.C. § 2611(2)(A). However, in certain circumstances the doctrine of equitable estoppel may prevent an employer from raising the fact that an employee was not an "eligible employee" as a defense.

See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 495 (8th Cir. 2002) (upholding application of equitable estoppel to affirmative defense under the FMLA). Equitable estoppel applies where a party has made a representation that misleads another person and that person then reasonably relies on that representation to her detriment. Id.

It is undisputed that Quinn received FMLA leave in 2007 without interference. Therefore, Quinn's FMLA interference claim centers around the County's action regarding her leave in 2008. However, Quinn was not an eligible employee in 2008. The undisputed evidence is that Quinn worked less than 1,250 hours in the twelve months prior to her leave in May 2008. Thus, no evidence exists from which to infer that she was, in fact, an eligible employee.

Quinn argues that the County should be equitably estopped from raising her eligibility as a defense because the County specifically stated that it was granting her leave under the FMLA from May 2008 to August 2008. Quinn, however, cannot invoke equitable estoppel because she has failed to produce evidence of detrimental reliance. See, e.g., Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 557-58 (6th Cir. 2009) (ruling that equitable estoppel was not applicable where employee scheduled surgery before being erroneously told he was eligible under FMLA because employee had no evidence of detrimental reliance). The evidence of record is that Quinn's medical condition forced her to take leave prior to May 2008 and that she would have remained on some form of leave, however designated. Therefore, regardless of whether any representations regarding the FMLA were made by the County, Quinn could not and did not rely on any such statements.

### b. Even if Quinn were an eligible employee, she was not denied any benefits of the FMLA

Even if Quinn met the criteria of "eligible employee," Quinn was given the benefits of

the FMLA. The FMLA creates an entitlement to twelve weeks per year of leave and to job restoration upon expiration of that leave. 29 U.S.C. §§ 2612, 2614. It is undisputed that Quinn received a full twelve weeks of FMLA leave each year she requested it. Further, she was free to return to work in the same position at the same pay rate at any time. In fact, her right to return to her job was contractually protected. Quinn argues that her right to job restoration was denied because she was constructively discharged. The Court previously considered, and rejected, Quinn's constructive discharge argument in its Order granting the County's motion to dismiss. No additional evidence supporting a constructive discharge argument has been produced. No evidence exists from which to infer that the County intended for Quinn to quit. To the contrary, all evidence produced shows that the County repeatedly asked Quinn to return to work.

### 2. Retaliation under the FMLA

The FMLA prohibits an employer from retaliating against an employee for exercising her rights under the FMLA. 29 U.S.C. § 2615(a)(2). To establish a prima facie case of retaliation, a plaintiff must produce evidence that (1) she exercised rights afforded by the FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002). An adverse employment action requires a significant change in an employee's status, such as termination, demotion, or reassignment with significantly different responsibilities. Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 789 (8th Cir. 2007). An adverse employment action is not a trivial offense or petty slight. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Close temporal proximity between exercise of FMLA rights and an adverse employment action allows an inference of causal connection, but a temporal gap will negate such an inference. See

9

McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1003 (8th Cir. 2005).

Quinn does not state whether her claim is based on her leave in 2007 or 2008 or both. She broadly asserts that she was retaliated against for exercising her FMLA rights. As discussed above, Quinn was not an "eligible employee" in 2008. However, it is undisputed that she was an "eligible employee" in 2007. Therefore, she may establish a prima facie claim if she can show an adverse employment action that is causally connected to her 2007 FMLA leave. The only adverse employment action she has identified is constructive discharge. Assuming for the moment that she was constructively discharged, she does not claim to have been constructively discharged until October 2008, more than a full year after her 2007 FMLA leave. See Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Docket No. 10] at 14-15. Thus, the temporal gap of more than one year negates any inference of causal connection. Finally, even if she were an "eligible employee" in 2008, she has not suffered any adverse employment action because she was not constructively discharged, as discussed above and in the Court's previous Order. Therefore, she cannot establish a prima facie case.

### 3. Damages

Assuming that Quinn could establish a prima facie case under the FMLA of either interference or retaliation, she still cannot prevail on either claim because she has not suffered any damages cognizable under the FMLA. Under the FMLA, an "employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B)." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).

Given this limited remedial scheme, courts have refused to allow recovery of compensation lost due to an underlying medical condition, even where the condition was exacerbated by an FMLA violation. See Johnson v. Georgia Television Co., 435 F. Supp. 2d 1237, 1240-41 (N.D. Ga. 2006) (holding that plaintiff was not entitled to damages where FMLA retaliation caused her to miss work by exacerbating her fibromyalgia); Harbuck v. Briggs Equip., Civ. No. H-05-0342, 2006 WL 2168096, *7 (S.D. Tex. July 31, 2006) (granting summary judgment to employer where plaintiff claimed leg infection was caused by being discouraged from taking FMLA leave); Dawson v. Leewood Nursing Home, Inc., 14 F. Supp. 2d 828, 833 (E.D. Va. 1998) (ruling that plaintiff could not recover future wages on theory that FMLA violation aggravated medical symptoms and caused her to be incapacitated); but see Farrell v. Tri-Country Metro. Transp. Dist. of Oregon, 530 F.3d 1023, 1025 (9th Cir. 2008) (upholding jury verdict based on work days missed due to stress caused by denial of FMLA leave).

Equitable relief under the FMLA includes reinstatement to a particular job on the same terms. See 29 U.S.C. § 2617(a)(1)(B). However, an employee that is unable to perform an essential function of her job due to a physical or mental condition is not entitled to reinstatement. 29 C.F.R. § 825.216(c). Courts may also award "front pay" in lieu of reinstatement. McBurney, 398 F.3d at 1001-02 n.2. "Front pay" is awarded to plaintiffs where reinstatement is not a viable option, typically because the former position is no longer available or the employer-employee relationship is no longer workable. Traxler v. Multnomah County, 596 F.3d 1007, 1012 (9th Cir. 2010). Because "front pay" is awarded as an alternative to reinstatement, it is not an appropriate remedy where reinstatement is not available. Franzen v. Ellis Corp., 543 F.3d 420, 426 (7th Cir. 2008).

Quinn argues that she is entitled to damages under the FMLA because she missed work due to her medical condition and the County caused her condition. This argument is essentially that adopted by the Ninth Circuit in Farrell and rejected by the courts in Harbuck, Johnson, and Dawson. This argument invites an analysis of foreseeability and causation that is familiar from tort law. However, the Court is unpersuaded by either Quinn's argument or the Farrell opinion. The FMLA does not create a new federal tort. See Harbuck, 2006 WL 2168096, at *7 (noting that a tort claim cannot be "engraft upon" the FMLA). Instead, the FMLA creates a scheme of substantive rights related only to employment leave for medical reasons. Courts may vindicate those substantive rights by allowing recovery of lost compensation flowing immediately, without any intermediate steps, from a denial of those rights. See 29 U.S.C. § 2617 (allowing recovery only of monetary damages that are a "direct result" of an FMLA violation). However, it would be untenable for federal courts to award damages for work-related personal injuries merely because a plaintiff has made allegations that an FMLA violation falls somewhere along the margins of the universe of factual causes of an injury, especially when tort law and worker's compensation schemes exist.

Finally, Quinn is not entitled to front pay. It is undisputed that she was unable to return to work at the end of her FMLA leave in August 2008 on account of her medical condition. Therefore, she is not entitled to reinstatement or front pay damages in lieu of reinstatement.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that St. Louis County's Motion for Summary Judgment [Docket No. 44] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 20, 2010.